**No. 23–3581**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

THE IMPERIAL SOVEREIGN COURT OF THE STATE OF MONTANA; et al.,

Plaintiffs-Appellees

v.

AUSTIN KNUDSEN, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Montana
Cause No. CV 23–50–BU–BMM, Honorable Brian M. Morris

**APPELLANTS' REPLY BRIEF**

| | |
|---|---|
| Austin Knudsen | Emily Jones |
|   *Montana Attorney General* |   *Special Assistant Attorney General* |
| Michael Russell | JONES LAW FIRM, PLLC |
| Thane Johnson | 115 N. Broadway, Suite 410 |
| Alwyn Lansing | Billings, MT 59101 |
| Michael Noonan | Phone: (406) 384-7990 |
|   *Assistant Attorneys General* | |
| MONTANA DEPARTMENT OF JUSTICE | |
| PO Box 201401 | |
| Helena, MT 59620-1401 | |
| Phone: (406) 444-2026 | |

    *Attorneys for Defendants-Appellants*
    *Austin Knudsen and Elsie Arntzen*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………………………ii

INTRODUCTION……………………………………………………………1

ARGUMENT………………………………………………………….2

    I.    PLAINTIFFS LACK STANDING TO SEEK A PRELIMINARY INJUNCTION AGAINST THE STATE DEFENDANTS……………...2

        A. HB359's Purported Chilling Effect On Plaintiffs Fails To Establish a Sufficiently Concrete or Particularized Injury……………………..2

        B. Plaintiffs Cannot Trace Their Alleged Injuries To The State Defendants………………………………………………………...4

        C. Enjoining The State Defendants From Enforcing HB359 Does Not Redress Plaintiffs' Alleged Injuries…………………………..5

    II.    HB359 DOES NOT BROADLY CRIMINALIZE SPEECH………………7

        A. Plaintiffs Unlikely To Succeed On the Merits of Their First Amendment Claims……………………………………………7

            1. Tiered Scrutiny Does Not Apply to Overbreadth Claims…………..7

            2. Plaintiffs' Conduct Is Not Categorically Protected by the First Amendment……………………………………………..10

            3. HB359 Is A Content- and Viewpoint-Neutral Law………………..13

        B. Plaintiffs Unlikely To Succeed On the Merits of Their Fifth Amendment Claims………………………………………...21

    III.    THE REMAINING FACTORS DO NOT WEIGH IN FAVOR OF AN INJUNCTION………………………………………………...25

    IV.    ANY PREMLIMINARY INJUNCTION SHOULD NOT EXTEND BEYOND THE PARTIES………………………………27

CONCLUSION………………………………………………………...29

i

# TABLE OF AUTHORITIES

**Cases**

*Bethel Sch. Dist.* No. 403 *v. Fraser*,
478 U.S. 675, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986) ................................. 19

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) ....................................................................... 28

*Broadrick v. Oklahoma*,
413 U.S. 601, 602, 93 S. Ct. 2908, 2910 (1973) .............................................. 9

*Brnovich v. Democratic Nat'l Comm.*,
141 S. Ct. 2321 (2021) .................................................................................. 20

*Cal. Teachers Ass'n v. Bd. of Educ.*,
271 F.3d 1141 (9th Cir. 2001) .................................................................. 21, 22

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ...................................................................................... 27

*Citizens United v. FEC*,
558 U.S. 310, 130 S. Ct. 876, (2010) .............................................................. 8

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
596 U.S. 61 (2022) ........................................................................................ 18

*City of Erie v. Pap's A.M.*,
529 U.S. 277, 120 S. Ct. 1382, (2000) ........................................................... 20

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) .................................................................................. 4, 5

*Counterman v. Colorado*,
143 S. Ct. 2106 (2023) ............................................................................... 10, 4

*Coyote Pub., Inc. v. Miller*,
598 F.3d 592 (9th Cir. 2010) .......................................................................... 8

*Crawford v. Lungren*,
96 F.3d 380 (9th Cir. 1996) ........................................................................... 12

*E. Bay Sanctuary Covenant v. Barr,*
934 F.3d 1026 (9th Cir. 2019) ....................................................... 27, 28

*Erznoznik v. City of Jacksonville,*
422 U.S. 205 (1975) ..................................................................... 15, 17

*Ex parte Young,*
209 U.S. 123 (1908) ............................................................................ 3

*FCC v. Pacifica Found.,*
438 U.S. 726, 98 S. Ct. 3026, (1978) ................................................. 19

*First Amendment. Texas v. Johnson,*
491 U.S. 397 (1989) ............................................................ 10, 11, 20

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.,*
528 U.S. 167 (2000) ............................................................................ 2

*Ginsberg v. New York,*
390 U.S. 629 (1968) .......................................................................... 12

*Golden Gate Rest. Ass'n v. City of S.F.,*
512 F.3d 1112 (9th Cir. 2008) ..................................................... 26-27

*IMDb.com Inc. v. Becerra,*
962 F.3d 1111 (9th Cir. 2020) ............................................................ 8

*Info. Providers' Coal. for Def. of First Amendment v. FCC,*
928 F.2d 866 (9th Cir. 1991) ............................................................ 21

*Jacobellis v. Ohio,*
378 U.S. 184, 84 S. Ct. 1676, (1964) ................................................ 23

*Juliana v. United States,*
947 F.3d 1159 (9th Cir. 2020) ......................................................... 5-6

*L.A. Cnty. Bar Ass'n v. Eu,*
979 F.2d 697 (9th Cir. 1992) ........................................................... 4, 5

*Long v. Van de Kamp,*
961 F.2d 151 (9th Cir. 1992) (per curiam) ................................. 3, 4, 5

*Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psych.,*
228 F.3d 1043 (9th Cir. 2000) ......................................................... 20

*New Motor Vehicle Bd.* of Cal. *v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) ............................................................ 27

*Project Veritas v. Schmidt*,
  72 F.4th 1043 (9th Cir. 2023) ................................................ 8

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ...................................................... 14, 15

*Reno v. ACLU*,
  521 U.S. 844, 117 S. Ct. 2329 (1997) .................................. 12, 21

*Renton v. Playtime Theatres*,
  475 U.S. 41 (1986) ............................................................ 12

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
  515 U.S. 819 (1995) .......................................................... 19

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
  547 U.S. 47 (2006) ............................................................ 12

*Small v. Avanti Health Sys., LLC*,
  661 F.3d 1180 (9th Cir. 2011) .............................................. 26

*Stanley v. University of S. Cal.*,
  13 F.3d 1313 (9th Cir. 1994) ................................................. 6

*State v. Madsen*,
  2013 MT 281, 372 Mont. 102, 317 P.3d 806 ............................ 22

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) .............................................. 26

*Town of Chester v. Laroe Estates, Inc.*,
  581 U.S. 433 (2017) ........................................................... 2

*Tschida v. Motl*,
  924 F.3d 1297 (9th Cir. 2019) ............................................... 8

*Tucson v. City of Seattle*,
  91 F.4th 1318, (9th Cir. 2024) ..................................... 6, 7, 8, 10

*Twitter, Inc. v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022) ................................................ 3

iv

*United States v. Albertini*,
  472 U.S. 675 (1985) ................................................................. 13

*United States v. Hansen*,
  599 U.S. 762, 143 S. Ct. 1932, (2023) ................................................ 9

*United States v. National Treasury Employees Union*,
  513 U.S. 454 (1995) ................................................................. 28

*United States v. O'Brien*,
  391 U.S. 367 (1968) ........................................ 10-11, 11-12, 12, 20

*United States v. Playboy Entm't Grp.*,
  529 U.S. 803, 120 S. Ct. 1878 (2000) ........................................ 14, 8

*United States v. Stevens*,
  559 U.S., 130 S. Ct. 1577, (2010) ................................................... 9

*United States v. Williams*,
  553 U.S. 285 (2008) ........................................................ 10, 7, 9

*Virginia v. Hicks*,
  539 U.S. 113, 123 S. Ct. 2191, (2003) ............................................. 9

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ...................................................... 18, 19, 21

## Statutes

**Montana Code Annotated**

  § 45-8-205 .................................................... 16, 24, 25

v

## <u>INTRODUCTION</u>

Plaintiffs respond to the State Defendants' appeal with the same conflation and misapplication of facts and legal standards that underly the District Court's erroneous preliminary injunction of House Bill 359 ("HB359"). Plaintiffs insist that their First Amendment facial challenge entitles them to a lesser burden to demonstrate standing, all the while still failing to satisfy that burden with respect to their claims against Defendants Knudsen and Arntzen (the "State Defendants"). Plaintiffs similarly gloss over the District Court's error in finding facial invalidity based on its analysis of HB359 *as applied to Plaintiffs* only. Indeed, the District Court failed to engage in either the proper overbreadth analysis or the analysis that would otherwise apply to a facial attack—*Salerno's* requirement that a challenger establish that no set of circumstances exist under which the challenged law would be valid. Plaintiffs also continue to distort the substance and reasonable interpretation of HB359's various provisions in an apparent effort to manufacture the alleged vagueness underlying their Fifth Amendment facial attack.

Ultimately, at the core of Plaintiffs' claims is their ostensible resentment of the Montana Legislature's legitimate exercise of its police power in a manner that conflicts with their preferred ideology. But this is not a cognizable basis to invalidate a duly enacted statute, and Plaintiffs cannot ignore HB359's broad legitimate sweep—protecting minors from inappropriately sexualized *conduct* and other

potentially harmful efforts to destabilize their normal education and development. This is clear from HB359's plain language, none of which prevents Plaintiffs from engaging in such conduct outside the presence of minors and without the State's subsidy or facilitation of the same.

The reality is that the mix-and-match analysis underlying the District Court's preliminary injunction fails as a matter of law. This Court should hold Plaintiffs and the District Court to the correct legal standards regardless of the attendant burden or administrative inconvenience to Plaintiffs. This Court should reverse the District Court's preliminary injunction accordingly.

## **ARGUMENT**

## I. **PLAINTIFFS LACK STANDING TO SEEK A PRELIMINARY INJUNCTION AGAINST STATE DEFENDANTS.**

The United States Supreme Court's standing jurisprudence makes clear that "'standing is not dispensed in gross.'" *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis* v. *Federal Election Comm'n*, 554 U. S. 724, 734 (2008)). Instead, "a plaintiff must demonstrate standing *separately for each form of relief sought*." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000) (emphasis added). "The same principle applies when there are multiple plaintiffs." *Town of Chester*, 581 U.S. at 439. "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Id.*

2

"In evaluating standing in a pre-enforcement challenge to a speech regulation, [this Court's] 'inquiry focuses on (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute.'" *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1174 (9th Cir. 2022) (quoting *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007)). This tracks with the standard set forth in *Ex parte Young*, 209 U.S. 123 (1908), under which "there must be a connection between the official sued and enforcement of the allegedly unconstitutional statute, and there must be a threat of enforcement." *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam). "Absent a real likelihood that the state official will employ his supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction[, and]…the 'case or controversy' requirement of Article III is not satisfied." *Id.*

### A. HB359'S PURPORTED CHILLING EFFECT ON PLAINTIFFS FAILS TO ESTABLISH A SUFFICIENTLY CONCRETE OR PARTICULARIZED INJURY.

The only injury Plaintiffs attempt to attribute to the State Defendants is their alleged self-censorship stemming from HB359's purported chilling effect. (Dkt.15.1 at 37-41.) However, this alleged injury is based solely on Plaintiffs' speculation and self-serving assertions rather than any actual evidence of the State Defendants' past,

3

pending, or threatened enforcement of HB359. Plaintiffs cannot satisfy their burden in this context by simply referencing the State Defendants' generalized duties or supervisory powers. *See L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (A "generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.") (citations omitted); *Long*, 961 F.2d at 152 (the lack of threatened enforcement by California's Attorney General and the absence of any connection between the Attorney General and the challenged conduct failed to satisfy Article III's standing requirements).[1]

### B. PLAINTIFFS CANNOT TRACE THEIR ALLEGED INJURIES TO STATE DEFENDANTS.

Article III standing's traceability prong requires Plaintiffs to prove that their supposed injury "can be traced to [the] allegedly unlawful conduct of" the State Defendants, "not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (internal citations omitted). Here, Plaintiffs do not dispute that Montana's County Attorneys are the officials who possess the unquestioned

---

[1] Plaintiffs also do not allege any intention of putting on or facilitating performances in the presence of minors that are intended to appeal to a prurient interest in sex—a key element of a sexually oriented performance under HB359. (Dkt.15.1 at 75.) This *mens rea* requirement further undercuts any of Plaintiffs' claimed self-censorship injuries stemming from HB359's relevant provisions. *See Counterman v. Colorado*, 143 S. Ct. 2106, 2114-15 (2023) (explaining how the inclusion of a *mens rea* requirement mitigates concerns over self-censorship as a First Amendment injury).

authority to conduct all prosecutions for public offenses on the State's behalf, nor do they dispute local school district trustees' equivalent authority to initiate teaching license disciplinary proceedings. (*See* Dkt.10.1 at 17-19).[2] Plaintiffs nonetheless insist that their claimed self-censorship injuries stem from the State Defendants' hypothetical exercise of their general duties and supervisory authority, all in the absence of any reliable evidence demonstrating as much and without any effort to explain how their speech is not still chilled in light of the County Attorneys' and local school district trustees' glaring authority under Montana law. This is a far cry from the "fairly direct" connection required to satisfy the causation element of Article III standing. *Eu*, 979 F.2d at 704; *Long*, 961 F.2d at 152.

## C.   ENJOINING STATE DEFENDANTS FROM ENFORCING HB359 DOES NOT REDRESS PLAINTIFFS' ALLEGED INJURIES.

Plaintiffs also continue to insist that enjoining the State Defendants from enforcing HB359 amounts to sufficient redress of their alleged injuries, again pointing to their general duties and authority. But Plaintiffs again miss the point entirely by failing to acknowledge their burden to demonstrate redressability by establishing that "the relief they seek [enjoining the State Defendants from enforcing HB359] is…*substantially* likely to redress their injuries[.]") *Juliana v. United States*,

---

[2] Plaintiffs again ignore the fact that Plaintiff Corcoran is the only Plaintiff whose alleged injury could arguably be attributed to Defendant Arntzen (Dkt.10.1 at n.6) and that Corcoran has no cognizable "chilling effect" injury because she has no First Amendment protection in this context. (*Id.* at n. 4).

947 F.3d 1159, 1170 (9th Cir. 2020) (emphasis added). Plaintiffs may have demonstrated that the State Defendants enforcing HB359 is hypothetically possible, but enjoining them from enforcement hardly amounts to a substantial likelihood of redress when the many other individuals and entities who are *most likely* to enforce HB359 remain free to do so. In other words, the District Court did not have "the power to prevent the injury at the time the complaint was filed." *Tucson v. City of Seattle*, 91 F.4th 1318, 2024 U.S. App. LEXIS 2362, at *1 (9th Cir. 2024).

Plaintiffs are also incorrect to the extent they implicitly assert that enjoining Defendant Knudsen from enforcement could redress any alleged chilling effect stemming from the County Attorneys by virtue of his supervisory authority over them. In other words, Prohibiting Defendant Knudsen from enforcement (*i.e.* a prohibitory injunction) is not the same as affirmatively requiring him to proactively monitor the activities of all 56 County Attorneys and force the dismissal of any prosecution under HB359 if and when they commence (i.e. a mandatory or affirmative injunction). *See Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (acknowledging the difference between prohibitory and mandatory preliminary injunctions and noting that the latter are "particularly disfavored.") (quotations and citation omitted). Plaintiffs never sought such relief, nor did the District Court entertain or address the same.

The fact remains that Plaintiffs simply failed to name the parties against whom injunctive relief would realistically reduce the risk of prosecution under HB359 and therefore likely redress their claimed self-censorship injuries. Plaintiffs' reliance on the State Defendants' generalized duties and authority is insufficient as a matter of law, and they lack standing for this reason as well.

## II. HB359 DOES NOT BROADLY CRIMINALIZE SPEECH.

### A. PLAINTIFFS UNLIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT CLAIMS.

#### 1. Tiered Scrutiny Does Not Apply to Overbreadth Claims.

The proper First Amendment overbreadth analysis requires demonstrating that the statute at issue "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008).[3] Plaintiffs' contention that the "State ignores the vast body of First Amendment law involving facial challenges, which generally trigger tiered scrutiny"

---

[3] "As the Supreme Court recently observed, litigants mounting a facial challenge to a statute normally must establish that *no set of circumstances* exists under which the [statute] would be valid." *Tucson*, 2024 U.S. App. LEXIS 2362, *15 (quotation marks omitted) (brackets and emphasis in original) (quoting *United States v. Hansen*, 599 U.S. 762, 769, 143 S. Ct. 1932, 216 L. Ed. 2d 692 (2023); *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)). However, "[b]reaking from [this] rule, the [First Amendment] overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications." *Id.* at *15-16. The First Amendment overbreadth doctrine is a discrete "departure from the normal rule of facial invalidation[.]" *Id.* at *16.

fails to provide any support to the contrary.[4] (Dkt.15.1 at 51.) Not one of the cases Plaintiffs cite involves a First Amendment overbreadth claim.

The dissent in *Citizens United* makes this abundantly clear: "Citizens United has not made an overbreadth argument." *Citizens United v. FEC*, 558 U.S. 310, 401 n.6, 130 S. Ct. 876, 934 (2010). Every other case provided by Plaintiffs involves allegations of content-based restrictions, not overbreadth. *See United States v. Playboy Entm't Grp.*, 529 U.S. 803, 809, 120 S. Ct. 1878, 1884 (2000); *Project Veritas v. Schmidt*, 72 F.4th 1043, 1050 (9th Cir. 2023); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1117 (9th Cir. 2020); *Tschida v. Motl*, 924 F.3d 1297, 1303 (9th Cir. 2019); *Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 599 (9th Cir. 2010). Having alleged that HB359 is both a content-based restriction and overbroad in relation "to the bill's lawful sweep," it should be apparent that differing modes of analysis apply to two distinct claims. (2-ER-309-10.)

Plaintiffs argue that "[t]he 'overbreadth doctrine' does not apply here because Plaintiffs assert their own free speech rights and because their speech falls squarely

---

[4] Tiered scrutiny is not applicable in a facial overbreadth analysis. This Court recently encountered a similar issue wherein a district court "proceeded to ignore [the overbreadth] legal standard in its analysis by erroneously conflating the overbreadth question of whether a substantial number of the law's applications are unconstitutional with the merits question of whether the law's application to a particular set of facts is not narrowly tailored to serve a significant governmental interest." *Tucson*, 2024 U.S. App. LEXIS 2362, at *18. Ultimately, "[t]he district court's failure to correctly apply the law of the overbreadth doctrine [was] sufficient to reverse the preliminary injunction as to Plaintiffs' facial overbreadth claim. *Id.* at *19.

within the scope of the First Amendment." (Dkt.15.1 at 52.) But so did each of the plaintiffs in the leading cases involving the overbreadth doctrine. In *Broadrick v. Oklahoma*, three plaintiffs challenged a state law barring partisan civil servants from political activities. 413 U.S. 601, 602, 93 S. Ct. 2908, 2910 (1973). *Hicks* involved an appeal of a trespass conviction. *Virginia v. Hicks*, 539 U.S. 113, 117, 123 S. Ct. 2191, 2195 (2003). *Williams* was involved an appeal of child pornography convictions. *Williams*, 553 U.S. at 291. *Stevens* involved an appeal of convictions for depicting animal cruelty. *United States v. Stevens*, 559 U.S. 460, 460, 130 S. Ct. 1577, 1579 (2010). And *Hansen* addressed a conviction under a statute prohibiting inducing or encouraging an alien to enter the country illegally. *United States v. Hansen*, 599 U.S. 762, 143 S. Ct. 1932, 1938 (2023). Each of those plaintiffs asserted their own free speech rights squarely within the First Amendment and alleged the law at issue implicated the overbreadth doctrine just as Plaintiffs did here. Contrary to Plaintiffs' argument, the overbreadth analysis does not "appl[y] only when the challenger's standing is premised on the infringement of others' rights." (Dkt.15.1 at 52-53.) The Supreme Court applied the overbreadth analysis in each of the above cases.

The overbreadth analysis determines whether the law at issue "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep." *Williams*, 553 U.S. at 292. "The first step…is to construe the challenged statute; it

is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* at 293; *see also Hansen*, 143 S. Ct. at 1940. The second step is to determine whether the statute "'prohibit[s] a substantial amount of protected speech' relative to its "plainly legitimate sweep." *Hansen*, 143 S. Ct. at 1946 (quoting *Williams*, 553 U.S. at 297). This Court should disregard Plaintiffs' assertion that tiered scrutiny applies to their facial overbreadth claim. *See Tucson*, 2024 U.S. App. LEXIS 2362, at *18.

### 2. Plaintiffs' Conduct Is Not Categorically Protected by the First Amendment.

The State may constitutionally restrict certain conduct occurring in the presence of minors that is not inherently expressive or contains both speech and non-speech elements. Plaintiffs argue that "[t]here is no reasonable argument that costumes, such as those worn by HB359's 'drag kings' and 'drag queens' are not protected by the First Amendment." (Dkt.15.1 at 54.) However, there are valid arguments—the conduct Plaintiffs seek to engage in before children is not inherently expressive and thus rendered unprotected under the First Amendment. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Moreover, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376

10

(1968). Plaintiffs attempt to distract from these arguments by pointing to obscenity, but State Defendants have not argued that HB359 targets "obscene" conduct.

"In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether [a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404. (quotations and citation omitted). The Supreme Court "consider[s] the context in which it occurred," and whether "[t]he expressive, overtly political nature of this conduct was both intentional and overwhelmingly apparent." *Id*. at 405–06.

Plaintiffs' intended audience includes children. Plaintiffs have summarily failed, both here and below, to establish what the particularized message is that they seek to convey to children at schools, libraries, and other locations where they intend to engage in covered conduct. Moreover, Plaintiffs cannot say with any degree of certainty, let alone a great likelihood, if their message could be understood by those children who view the shows or performances—assuming there actually is a message to be conveyed. Plaintiffs' conduct therefore does not amount to inherent expression subject to First Amendment protection.

Further, should Plaintiffs' conduct be considered a mix of speech and nonspeech elements, Montana has a sufficient governmental interest in regulating the nonspeech element to justify any incidental limitations on Plaintiffs. *O'Brien*, 391

11

U.S. at 376. The *O'Brien* test applies in circumstances where a law regulates inherently "expressive conduct." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 67-68 (2006). Under the *O'Brien* test, a governmental restriction on speech is constitutional if (1) the government has the power to pass the law; (2) the law furthers a substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the restriction is narrowly tailored. *O'Brien*, 391 U.S. at 377.

First, Montana has the power to pass a law prohibiting access to sexualized content and conduct by minors. This extends not only to restricting a minor's access to certain materials, but also to using zoning laws to place physical distance between areas where minors are and businesses that provide sexualized content. *See, e.g., Ginsberg v. New York,* 390 U.S. 629, 633 (1968); *Crawford v. Lungren*, 96 F.3d 380, 389 (9th Cir. 1996); *Renton v. Playtime Theatres*, 475 U.S. 41, 55 (1986). Second, Montana has "'a compelling interest in protecting the physical and psychological well-being of minors' which extended to shielding them from indecent messages that are not obscene by adult standards." *Reno v. ACLU*, 521 U.S. 844, 869, 117 S. Ct. 2329, 2343 (1997) (quoting *Sable Communications of Cal. v. FCC*, 492 U.S. 115, 126 (1989).

Third, Montana's interest in protecting minors from harm is unrelated to the suppression of free speech—rather, it regulates specific conduct in the presence of

minors in certain venues. HB359's restrictions are narrowly targeted: the conduct itself is not banned or prohibited in nearly all other contexts. The restrictions are also narrowly tailored. A regulation with incidental burdens on expressive conduct is not invalid "simply because there is some imaginable alternative that might be less burdensome on speech," *United States v. Albertini*, 472 U.S. 675, 689 (1985). The restrictions on "sexual oriented performances" only apply if a minor is present or if one is to occur at a state-funded school or library during regular operating hours. (Dkt.15.1 at 90-91.) Moreover, the restrictions on "drag story hours" only apply during the regular operating hours of public schools or libraries—times of day when minors are most likely, if not guaranteed, to be present. (*Id.*) HB359 is constitutional under *O'Brien*.

### 3.     HB359 Is A Content- and Viewpoint-Neutral Law.

Plaintiffs again fail to meaningfully address the State Defendants' arguments that HB359 is a content- and viewpoint-neutral law that is justified without reference to the content of Plaintiffs' speech or the viewpoints expressed. Moreover, cherry-picking comments from a few legislators is insufficient to ascribe malintent to the entire legislative body and force a strict scrutiny analysis. Plaintiffs, instead, rely on three factually distinguishable cases that provide little, if any, support to justify their position. At most, HB359 should be subject to intermediate scrutiny for the reasons provided below.

13

First, *United States v. Playboy Entm't Grp* involved a federal regulation requiring cable operators to either "scramble a sexually explicit channel in full or to limit the channel's programming to the house between 10 p.m. and 6 a.m." 529 U.S. at 808. The purpose of the regulation was to "shield children from hearing or seeing images." *Id*. at 806. The result, however, was that most cable operators opted to limit access to the hours provided by the regulation, thus eliminating the service for two-thirds of the day. *Id*. at 806-07. The Court found this to be a content-based regulation, subjected it to strict scrutiny, and because there was at least one lesser restrictive alternative means—that is, to place the onus on the subscriber to request certain channels to be blocked—the regulation could not survive. *Id*. at 826-27.

Second, in *Reed v. Town of Gilbert*, the Town adopted a code that placed various categories of restrictions based upon the type of information outdoor signs seek to convey. 576 U.S. 155, 159 (2015). The code also prohibited posting without a permit, but then exempted 23 categories of signs from that requirement. *Id*. The Court focused on three of those categories: Ideological Signs, Political Signs, and Temporary Directional Signs Relating to a Qualifying Event, noting that Ideological Signs were treated the most favorably and that Directional Signs were treated the least favorably. *Id*. at 160-61. The plaintiff was cited twice by the Town for noncompliance with the code for displaying Temporary Directional Signs that provided the church's name and the time and location of the next service. *Id*. at 161.

14

The Court held that because the Town placed more stringent requirements on one category of signs over others, the code was a content-based regulation that failed to survive strict scrutiny. *Id*. at 173.

Third, *Erznoznik v. City of Jacksonville* involved a drive-in theater that had a screen visible beyond its property. 422 U.S. 205, 206 (1975). The theater displayed a movie with female nudity, which violated a local ordinance prohibiting films containing nudity if the film was visible from a public area. *Id*. at 206-07. The Court struck down the ordinance, finding that it was a content-based restriction that selectively attempted to "shield the public from some kinds of speech on the ground that they are more offensive than others," and that the ordinance was "broader than permissible" in trying to protect children from such images. *Id*. at 209, 213. Selective restrictions "have been upheld only when the speaker intrudes on the privacy of the home" "or the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure." *Id*. at 209. (citations omitted). The ordinance was too broad for this justification because it was not just directed or limited by explicit nudity, but it swept too far by forbidding "all films containing any uncovered buttocks or breasts, irrespective of context or pervasiveness." *Id*. at 213. "Thus, it would bar a film containing a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous." *Id*.

15

Here, unlike in *Playboy*, signal scrambling is not an option in public schools or libraries, nor an option in a restaurant where a family is trying to dine or in a public park where children play and inadvertently become audiences to a sexually oriented performance. Customer opt-out may work with a cable provider, but a parent should not be forced to opt-out their child to a school day, trip to the library, or going to public property. And moreover, *Playboy's* regulation effectively hindered access to the content to not only children, but also adults, for much of the day. HB359 may have a temporal restriction at schools and libraries, but no such restriction exists for private businesses or homes. *Playboy* is factually distinguishable. *Reed* explicitly focused on content by treating ideological and political signs more favorably than a sign directing people to a church service. Facially, HB359 restricts *conduct*—it favors no speech by one group over another. It does not regulate the content of any message, nor does it ban specific messaging to minors or anyone else. Because HB359 does not place more stringent requirements on one group over another, *Reed* is also factually distinguishable.

And unlike in *Erznoznik*, HB359 is not a broad ban on nude films or nudity itself. It does not place any restrictions on adults or minors viewing MPA-rated films.[5] Adults may continue viewing sexually oriented performances, just without

---

[5] "Performance" "means any motion picture, film, or videotape (*except* a motion picture or videotape rated G, PG, PG-13, or R by the motion picture association of America) . . ." Mont. Code Ann. § 45-8-205(6). (emphasis added).

16

minors present. The purpose of the ordinance in *Erznoznik* was a concern about the inadvertent viewer that may see the screen beyond a drive-in's property. That purpose comes into play with HB359, but it is not limited to it. HB359 not only attempts to curtail sexually oriented performances that may occur on public property and in view of a family not seeking it out, but also in areas where minors may be captive, such as businesses, schools, and libraries.

Should this Court find that HB359 selectively acts to shield children from Plaintiffs' speech, it must also consider that selective restrictions have been upheld due to the "degree of captivity [that] makes it impractical for the unwilling viewer or auditor to avoid exposure." *Erznoznik*, 422 U.S. at 209. Children in schools or libraries are captive audiences. Families at bars and restaurants are also captive audiences. It is impractical to force a child to opt-out of class or avoid the library because a sexually oriented performance or drag story hour may occur. Similarly, it is impractical to force a family unwilling to view a sexually oriented performance at a restaurant to leave. A pedestrian can avoid a drive-in screen that might show a movie with nudity, but it is far more difficult for a child or family to avoid sexually oriented performances that are not restricted to screens at a theater. The degree of captivity involved, as well as the difference between live performances and a video on a screen, further demonstrate that *Erznoznik* is factually distinguishable.

17

HB359 is not a restriction similar to the regulations at issue in *Playboy*, *Reed*, or *Erznoznik*, because, on its face, HB359 regulates pure conduct. "A regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quoting *Reed*, 576 U.S. at 163). Conversely, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citing *Renton*, 475 U.S. at 47-48). Thus, "[g]overnment regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" *Id*. (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 3068 (1984)).

Despite Plaintiffs' arguments, HB359 does not reference any speech at all. There are no restrictions on what may be said to children, or anyone else for that matter. HB359 simply limits a minor's exposure to specifically defined conduct and is justified based upon the harmful secondary effects of exposure to sexualized content at a young age. The age limitation does not discriminate against "the topic discussed[,] nor the idea or message expressed," *Reagan Nat'l,* 596 U.S. at 74—"even if it has an incidental effect on some speakers or messages but not others,"

*Ward*, 491 U.S. at 791. HB359 is a content-neutral law that survives intermediate scrutiny as shown above.

For many of the same reasons, HB359 is also a viewpoint-neutral law. Because viewpoint discrimination is a "form of content discrimination," *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995), this argument fails because HB359's provisions are "justified without reference to the content." *Ward*, 491 U.S. at 791. HB359 regulates indecent conduct in the presence of minors. *See Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986) (treating punishment of "offensively lewd and indecent speech" as viewpoint neutral); *FCC v. Pacifica Found.*, 438 U.S. 726, 745, 98 S. Ct. 3026, 3038 (1978) (treating regulation of profane monologue as viewpoint neutral).

Plaintiffs fail to articulate what viewpoints they seek to convey to minor children while engaging in "sexually oriented performances" or "drag story hours." (*See* 2-ER-239-40.) Additionally, Plaintiffs assert that the ability to read books to children is contingent on wearing a "gendered costume," and so the law must be targeting the viewpoint of the speaker. (2-ER-240.) Again, the viewpoint they seek to convey remains unexplained. And, most importantly, wearing a "gendered costume" is not protected under the First Amendment because it is not inherently expressive. Plaintiffs have failed to show exactly (1) what particularized message

19

they seek to convey and (2) whether there is a great likelihood that said message would be understood by the children. *Johnson*, 491 U.S. at 404. These unanswered questions strike at the heart of not only this claim, but of all their claims. HB359 is a viewpoint-neutral regulation that does not trigger strict scrutiny. *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psych.*, 228 F.3d 1043, 1055 (9th Cir. 2000).

Plaintiffs' claims of legislative animus also do not bring them any closer to strict scrutiny. The *O'Brien* Court was clear: "[i]nquiries into congressional motives or purposes are a hazardous matter," particularly where a court is "asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it." 391 U.S. at 383-84; *accord Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021). That is because "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *O'Brien*, 391 U.S. at 384. Thus, it is well established that courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 282, 120 S. Ct. 1382, 1387 (2000).

HB359 is a content-and viewpoint-neutral law that is subject to intermediate scrutiny. The law furthers the important government interest of protecting the well-being of minors by regulating their access to indecent or inappropriate conduct.

*Reno*, 521 U.S. at 869. HB359 is essentially an age restriction: drag shows at libraries are limited to times of day that minors are unlikely to be viewing, and sexually oriented performances are prohibited from occurring in the presence of a minor at any time at specific locations. Plaintiffs are unlikely to succeed on the merits of their First Amendment claims.

### B. PLAINTIFFS UNLIKELY TO SUCCEED ON THE MERITS OF THEIR FIFTH AMENDMENT CLAIMS.

HB359 is not unconstitutionally vague because it provides fair notice and does not encourage indiscriminate enforcement, despite Plaintiffs' hypotheticals and exaggerated concerns to the contrary. In statutory construction, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794. "[E]ven in the strictest sense, due process does not require 'impossible standards' of clarity." *Info. Providers' Coal. for Def. of First Amendment v. FCC*, 928 F.2d 866, 874 (9th Cir. 1991) (citations and quotations omitted). Rather, "[t]he touchstone of a facial vagueness challenge in the First Amendment context [] is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled." *Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001) (emphasis in original). And when conducting a vagueness analysis, this Court has instructed that "it is solely within the province of the state courts to authoritatively

21

construe state legislation." *Id*. at 1146-47 (citation omitted).[6] But Plaintiffs allege more—not only do they demand a definition for every word while simultaneously stretching defined words beyond the bounds of reasonableness, but they also contend that HB359 fails because it does not provide "fair warning" and "lacks adequate standards to protect against discriminatory enforcement." (Dkt.15.1 at 72.) HB359 does not fail for either reason.

***Drag story hour restriction***. Plaintiffs, many of which are groups composed of, provide support for, or host drag performers, blatantly feign confusion as to what a "drag king" or "drag queen" is. (*Id.* at 73.) Their complaints of vagueness and misunderstanding are contradicted by their own statements in their Amended Complaint. (2-ER-274-76.) ("The Imperial Court's drag performances explore multiple gender expressions"; "Montana Book Company has hosted or plans to continue to host . . . age-appropriate drag events"; "Imagine Nation has hosted and plans to host all-ages drag shows and drag story hours"; "The Center recently produced Montana Pride, an annual event that celebrates LGBTQ+ community through…drag performances"; "The Great Falls LGBTQ+…organizes events for all

---

[6] The Montana Supreme Court has been clear on the issue of absent definitions: "[t]he Legislature need not define every term it employs in a statute. If a term is one of common usage and is readily understood, a court should presume that a reasonable person of average intelligence can understand it. The failure to include definitions of all terms does not automatically make a statute vague as long as the meaning is clear and provides a defendant with adequate notice of the proscribed conduct." *State v. Madsen*, 2013 MT 281, ¶ 9, 372 Mont. 102, 104-05, 317 P.3d 806, 808.

audiences featuring drag performances"). It strains common sense to believe that Plaintiffs struggle to understand what certain terms mean when they use those terms to describe their own conduct.

Moreover, groups that claim expertise in "drag," are somehow confused enough to believe that "costumed superheroes, Disney princesses, lumberjacks, teachers on school spirit days, and libraries celebrating Halloween" might be roped into HB359's definitions—a ridiculous and disingenuous assertion that should be disregarded. (Dkt.15.1 at 73.) Further evidence of their understanding of what "drag" means can be found within their own declarations. (*See* 2-ER-192.) ("Our drag performances necessarily include drag and flamboyant costuming and may also include sexual content.") Plaintiffs know what drag is and therefore know what HB359 restricts or prohibits.

As Justice Potter Stewart once said while expressing the difficulty of defining pornography, "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. *But I know it when I see it. . ." Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S. Ct. 1676, 1683 (1964) (Potter., J, concurring) (emphasis added). A person of ordinary intelligence knows "drag" when they see it. Plaintiffs know what "drag" is because it is their professed interest. Plaintiffs' alleged fear of discriminatory enforcement is exaggerated at best.

23

***Sexually oriented performances***. Plaintiffs have repeatedly argued that the word "performance" remains undefined in HB359. (Dkt.15.1 at 76.) But this not a defect of HB359, this is a failure by Plaintiffs to read the entire law. HB359 provides specific codification instructions: "[Sections 1 and 2] are codified as an integral part of Title 45, chapter 8, and the provisions of Title 45, chapter 8, apply to [sections 1 and 2]." (Dkt.15.1 at 92.) Mont. Code Ann. § 45-8-205 specifically defines "performance,"[7] and this definition applies to HB359.

Plaintiffs argue that the definition of "nude" "plays no role in limiting the definition of 'sexually oriented performance,'" (Dkt.15.1 at 76-77), but that is because "nude" applies to a "sexually oriented business," which applies only to HB359's Section 2. (*See Id.* at 90.) They contend that "'[s]tripping is not limited to the <u>actual</u> 'removal of clothing,'" but ignore that the reason for the inclusion of "simulated removal" is the "sexual manner" by which it is done, conduct that is inappropriate with minors present. (*Id.* at 77, 90) (emphasis in original). Plaintiffs further complain that the "relationship between 'salacious dancing' and 'sexually oriented' and 'sexually oriented performance' is unclear;" and that "[S]exually oriented performance' does not incorporate the law's definition of nudity" all to say

---

[7] "Performance" means "any motion picture, film, or videotape (except a motion picture or videotape rated G, PG, PG-13, or R by the motion picture association of America); phonograph record; compact disk; tape recording; preview; trailer; play; show; skit; dance; or other exhibition played or performed before an audience of one or more, with or without consideration." Mont. Code Ann. § 45-8-205(6).

that "the State cannot pinpoint what is and what is not a 'sexually oriented performance.'" (*Id.* at 77.) But that argument fails considering that "sexually oriented performance" is clearly defined. (*See Id.* at 89-90.)

Plaintiffs provide two reaching hypotheticals in an effort to render HB359 impermissibly vague. The first involves a person wearing a bathing suit in a parade, the second a pro-choice protestor with a graphic sign depicting the female reproductive system. (*Id.* at 78.) Both scenarios fail because neither involves an "inten[t] to appeal to a prurient interest in sex," which is a crucial element of "sexually oriented performance." (*Id.* at 89.) Like the definition for "performance," the definition for "[p]rurient interest in sex" is also contained in Mont. Code Ann. § 45-8-205.[8] Plaintiffs make no claim that either of these terms are vague or confusing.

Plaintiffs' argument reflects their attempt to manufacture vagueness based on exaggerated scenarios, contorted words, and twisted phrasing. But Plaintiffs' self-serving and fanciful hypotheticals simply do not render HB359 void for vagueness. Plaintiffs are unlikely to succeed on the merits of their Fifth Amendment claim.

## III. THE REMAINING FACTORS DO NOT WEIGHT IN FAVOR OF AN INJUNCTION.

Plaintiffs also fail to establish that they are likely to suffer an irreparable harm absent an injunction and that the balance of equities and public interest weigh in their

---

[8] "Prurient interest in sex" means a "shameful or morbid interest in sex or excretion." Mont. Code Ann. § 45-8-205(8).

favor. To satisfy the irreparable harm requirement, a plaintiff must show that "irreparable harm is 'likely'; the 'possibility' of harm is insufficient to meet [Plaintiffs'] burden." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375 (2008)). Additionally, Plaintiffs must establish that "the balance of equities tips in [their] favor." *Winter*, 555 at 20. And "'courts … should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Plaintiffs failed to show any immediate threatened injury fairly traceable to the State Defendants. For example, Plaintiffs made no plausible connection between any cancelled or modified events and any actual, threatened, or imminent action by the State Defendants. Their remaining concerns are mere conjecture and unsubstantiated. Perhaps most important is their failure to establish how they are entitled to First Amendment protection for covered conduct in the presence of minors. Without that, they cannot show that HB359 abridges their constitutional rights and thus cannot show a likelihood of irreparable injury in the absence of an injunction. The final factor also favors the State Defendants—that HB359 is a duly enacted statute weighs against the district court's granting of an injunction. *Golden Gate Rest. Ass'n v. City of S.F.*, 512 F.3d 1112, 1126 (9th Cir. 2008)

26

("The public interest may be declared in the form of a statute."); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (A State "suffers a form of irreparable injury" any time it is prevented from "effectuating" laws "enacted by representatives of its people."). The State, and the public at large, maintain a compelling interest in enforcing HB359—preventing minors' exposure to indecent and potentially harmful conduct.

## IV. ANY PREMLIMINARY INJUNCTION SHOULD NOT EXTEND BEYOND THE PARTIES.

Plaintiffs contend that this Court should reject State Defendants' alternative request that the preliminary injunction be narrowed based on two faulty arguments. (*See* Dkt.15.1 at 81.) First, the State Defendants did not waive the argument that the scope of the injunction should be narrowed to only parties before the District Court. In State Defendants' Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction, State Defendants first addressed the need for a narrowed scope in setting forth the applicable standards. (*See* 2-ER-83.) ("Next, if a plaintiff establishes that a preliminary injunction should issue, the injunctive relief 'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). The State Defendants also quoted *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019), for the proposition that "all injunctions—even ones involving national policies—must be 'narrowly tailored to remedy the specific harm shown'"

27

(*Id.*) "This is so, in part, because broad injunctions may stymie novel legal challenges and robust debate." (*Id.*) (quoting *City & Ctny. Of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018)).

This argument also arose the Balance of Equities and Public Interest section: "'Likewise, a district court should also consider whether a preliminary injunction would be in the public interest if 'the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences.'" (2-ER-102) (quoting *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016)). The State Defendants specifically pointed out that "[a]n overbroad injunction can also implicate the public interest." (*Id.*) (citing *Stormans, Inc.,* 586 F.3d at 1139. The State Defendants repeatedly asserted that an overbroad injunction should not be issued, which was more than enough to give the District Court "an opportunity to consider its merits in the first instance." (Dkt.15.1 at 81.)

Second, the State Defendants provided supporting authority, specifically citing *United States v. National Treasury Employees Union*, 513 U.S. 454, 477 (1995), a First Amendment case where plaintiffs asserted a facial challenge to a law. There, the Court reversed the district court's scope of injunction because it was not necessary "to provide relief to non-parties when a narrower remedy will fully protect the litigants." *Id*. at 478. Similarly, here, even though Plaintiffs assert a facial challenge, an injunction narrowed in scope to only parties involved (which includes

28

individual, associational, and organizational parties) is more than sufficient to provide relief to the extent this Court deems necessary.

## **CONCLUSION**

This Court should reverse the District Court's Preliminary Injunction for all of the reasons stated in the State Defendant's Opening Brief (Dkt.10.1) and herein.

DATED this 1st day of March, 2024.

Respectfully submitted,

Austin Knudsen
MONTANA ATTORNEY GENERAL

/s/ *Michael Noonan*
Michael Noonan
Michael Russell
Thane Johnson
Alwyn Lansing
  *Assistant Attorneys General*
MONTANA DEPARTMENT OF JUSTICE
PO Box 201401
Helena, MT 59260-1401

Emily Jones
  *Special Assistant Attorney General*
JONES LAW FIRM, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101

*Attorneys for Defendants and Appellants*
*Austin Knudsen and Elsie Arntzen*

29

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, Michael Noonan an employee in the Office of the Attorney General of the Montana, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6998 words, excluding the parts of the document exempted by Rule 32(f), and complies with the typeface requirements and length limits of Rules 29 and 32(a)(5)–(7), and Circuit Rule 29-2(c)(3).

/s/ *Michael Noonan*
MICHAEL NOONAN

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: March 1, 2024        /s/ *Michael Noonan*
MICHAEL NOONAN