

April 17, 2025

**VIA CM/ECF**

Ms. Molly C. Dwyer
Clerk, United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA, 94103-1526

    Re:   *Imperial Sovereign Court of the State of Montana, et al. v. Knudsen, et al.*, <u>No. 23-3581 (9th Cir.)</u>

Dear Ms. Dwyer:

    Pursuant to Fed. R. App. P. 28(j), Defendants-Appellants hereby inform the Court of the enclosed decision by the United States Court of Appeals for the Ninth Circuit in *Ariz. Attys. for Crim. Just. v. Mayes*, 127 F.4th 105 (9th Cir. 2025). Defendants-Appellants recently became aware of the *Mayes* decision filed on January 23, 2025. *Mayes* came after the June 4, 2024, oral argument in the above-captioned appeal, in which this Court's decision remains pending.

    The *Mayes* Court reversed the district court's judgment for the plaintiffs on their First Amendment facial challenge to an Arizona law requiring criminal defense attorneys to initiate any contact with victims through the prosecutor's office. *Id.* at 107. Key to this reversal was the Court's explicit acknowledgement that a First Amendment facial challenge to a statute requires a plaintiff to prove "that the statute

DEPARTMENT OF JUSTICE

215 North Sanders   |   (406) 444-2026
PO Box 201401   |   Contactdoj@mt.gov
Helena, MT 59620-1401   |   mtdoj.gov

Letter to Ms. Molly C. Dwyer re No. 23-3581 (9th Cir.)
April 17, 2025
Page 2

applies unconstitutionally to a substantial amount of speech relative to its constitutional applications." *Id.* "Only then can a court invalidate the statute in all applications, including constitutional ones not challenged in the case." *Id.* In other words, "'the ratio of unlawful-to-lawful applications' must be 'lopsided enough to justify the 'strong medicine' of facial invalidation for overbreadth.'" *Id.* at 110 (quoting *United States v. Hansen*, 599 U.S. 762, 784, 143 S. Ct. 1932, 1948 (2023)). The *Mayes* Court ultimately concluded the district court failed to correctly apply the proper test for First Amendment facial challenges, reversed the district court's facial invalidation and injunction, and remanded for entry of judgment in favor of the defendants. *Id.* at 113.

*Mayes* is pertinent here because it strongly supports Defendants-Appellants' argument that the district court erred in failing to apply the proper test for Plaintiffs-Appellees' First Amendment facial challenge. *See* Dkt.10.1 at 33-34 (quoting *Hansen*, 143 S. Ct. at 1939); Dkt.28.1 at 13-16. Indeed, *Mayes* directly contradicts the district court's explicit rejection of this test. *See, e.g.*, Dkt.10.1 at 34 (citing 1-ER-22-23). The reversal of the district court in *Mayes* is also consistent with the relief Defendants-Appellants seek on appeal here—reversal of the district court's preliminary injunction. *See* Dkt.10.1 at 70; Dkt.28.1 at 35.

Letter to Ms. Molly C. Dwyer re No. 23-3581 (9th Cir.)
April 17, 2025
Page 3

Sincerely,

AUSTIN KNUDSEN
  *Montana Attorney General*


*/s/ Michael D. Russell*
Michael D. Russell
  *Assistant Attorney General*

Enc.: *Ariz. Attys. for Crim. Just. v. Mayes*, 127 F.4th 105 (9th Cir. 2025)

# *Ariz. Attys. for Crim. Just. v. Mayes*

United States Court of Appeals for the Ninth Circuit

February 5, 2024, Argued and Submitted, Phoenix, Arizona; January 23, 2025, Filed

No. 22-16729

**Reporter**
127 F.4th 105 *; 2025 U.S. App. LEXIS 1454 **; 2025 WL 272242

ARIZONA ATTORNEYS FOR CRIMINAL JUSTICE; CHRISTOPHER BAIRD DUPONT; RICH ROBERTSON; RICHARD L. LOUGEE; RICHARD D. RANDALL; JEFFREY A. KIRCHLER; JOHN CANBY, Plaintiffs-Appellees, v. KRISTEN K. MAYES, in her official capacity as Attorney General of the State of Arizona, Defendant-Appellant, and MARET VESSELLA, Chief Bar Counsel of the State Bar of Arizona; JEFFREY D. GLOVER, Colonel, in his official capacity as Director of the Arizona Department of Public Safety,[*] Defendants.

**Prior History:** [**1] Appeal from the United States District Court for the District of Arizona. Steven Paul Logan, District Judge, Presiding. D.C. No. 2:17-cv-01422-SPL.

*Arizona Attys. For CRIM Justice v. Ducey, 638 F. Supp. 3d 1048, 2022 U.S. Dist. LEXIS 199781, 2022 WL 16631088 (D. Ariz., Nov. 2, 2022)*

**Disposition:** REVERSED and REMANDED.

**Summary:**

**SUMMARY**[**]

*First Amendment*

The panel reversed the district court's judgment for plaintiffs, Arizona Attorneys for Criminal Justice ("Attorneys"), and remanded, in an action alleging that an Arizona law that requires criminal defense attorneys and their agents ("Defense Team") to initiate any contact with victims through the prosecutor's office (the "Victim Contact Limit") violates, on its face, the Speech Clause of the First Amendment.

The Victim Contact Limit, Ariz. Rev. Stat. Ann. § 13-4433(B), primarily applies to requests for interviews, including, but not limited to, investigative interviews seeking exculpatory information. But it also prohibits covered actors from reaching out to victims for non-interview conversations and information sharing on other topics, such as the criminal legal system and the death penalty process.

The panel noted that in considering a facial challenge it may assume without deciding that the statute reaches some protected speech. The Attorneys must also show, however, that a substantial number of the Victim Contact Limit's applications are unconstitutional, judged in relation to the law's plainly legitimate [**2] sweep. Here, the Attorneys challenged the Victim Contact Limit's application only to the extent it requires them to funnel requests for non-interview contacts through the prosecution. But victim-interview requests are the statute's primary applications. So, even assuming the challenged applications of the law are unconstitutional, they are not substantial relative to the unchallenged applications. Therefore, as framed, the Attorneys' facial challenge to the Victim Contact Limit fails.

---

[*] Colonel Jeffrey D. Glover is substituted for his predecessor Colonel Heston Silbert as Director of the Arizona Department of Public Safety, pursuant to Federal Rule of Appellate Procedure 43(c).

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

127 F.4th 105, *105; 2025 U.S. App. LEXIS 1454, **2

The panel reversed the district court's ruling that the Victim Contact Limit is unconstitutional on its face, vacated the permanent injunction against its enforcement, and remanded for entry of judgment in favor of defendants.

**Counsel:** Jared G. Keenan (argued), American Civil Liberties Union of Arizona, Phoenix, Arizona; Kathleen E. Brody, Mitchell Stein Carey Chapman PC, Phoenix, Arizona; David A. Lane, Killmer Lane LLP, Denver, Colorado; Andrew McNulty, Newman McNulty, Denver, Colorado; for Plaintiffs-Appellees.

Alexander W. Samuels (argued), Principal Deputy Solicitor General; Ashley T. Levine, Assistant Attorney General; Kristin K. Mayes, Attorney General; Office of the Arizona Attorney General, Phoenix, Arizona; [**3] for Defendants-Appellants.

Colleen Clase and Thomas E. Lordan, Arizona Voice for Crime Victims, Phoenix, Arizona, for Amici Curiae Arizona Voice for Crime Victims, Arizona Crime Victim Rights Law Group, Legal Services for Crime Victims in Arizona, Parents of Murdered Children, and the National Crime Victim Law Institute.

Nicholas Klingerman, Krista Wood, and Robert E. Prather, Deputy County Attorneys; Rachel H. Mitchell, Maricopa County Attorney; Maricopa County Attorney's Office, Phoenix, Arizona, for Amicus Curiae Maricopa County Attorney's Office.

**Judges:** Before: Marsha S. Berzon, Andrew D. Hurwitz, and Anthony D. Johnstone, Circuit Judges. Opinion by Judge Johnstone.

**Opinion by:** JOHNSTONE

# Opinion

[*107] JOHNSTONE, Circuit Judge:

Courts usually decide constitutional claims by addressing specific applications of a law to individual plaintiffs, case by case. But in this case the plaintiffs do more than challenge the constitutionality of how a law applies to them in a particular case. Instead, they challenge a statute on its face and, if successful, their challenge would invalidate that statute in all its applications.

In general, a facial challenge can succeed only when all a statute's applications would be unconstitutional. [**4] Yet in facial challenges under the *Speech Clause of the First Amendment*, like this one, courts set the bar lower out of respect for the value of free expression. A plaintiff mounting such a facial challenge must prove that the statute applies unconstitutionally to a substantial amount of speech relative to its constitutional applications. Only then can a court invalidate the statute in all applications, including potentially constitutional ones not challenged in the case.

Plaintiffs Arizona Attorneys for Criminal Justice ("Attorneys") challenge the part of an Arizona statute, *Ariz. Rev. Stat. Ann. § 13-4433(B)*, that prohibits criminal defense attorneys and their agents ("Defense Team") from initiating direct contact with crime victims. That part of the statute ("Victim Contact Limit") requires the Defense Team to initiate any contact with victims through the prosecutor's office. The Attorneys bring a facial challenge to invalidate that restriction, arguing that it violates the *First Amendment*. But the Attorneys do not challenge the Victim Contact Limit to the extent that it requires the Defense Team to communicate victim-interview requests through the prosecution; they challenge it only to the extent it requires them to funnel requests for *non*-interview contacts through [**5] the prosecution. But victim-interview requests are the law's primary applications. So even if we assume the challenged applications of the law are unconstitutional, they are not substantial relative to the unchallenged applications. Therefore, the Attorneys' facial challenge to the Victim Contact Limit, as they have framed it, must fail.

**I. Victims' Rights in Arizona and the Attorneys' Challenge**

127 F.4th 105, *107; 2025 U.S. App. LEXIS 1454, **5

In 1990, Arizona voters amended their state constitution to include a crime victims' bill of rights. *Ariz. Const. art. II, § 2.1*. That provision guarantees "victims' rights to justice and due process." Id. *§ 2.1(A)*. These include rights "[t]o be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Id. *§ 2.1(A)(1)*. They also include the right "[t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Id. *§ 2.1(A)(5)*. The state constitution gives the Arizona Legislature authority to enact laws implementing these rights. Id. *§ 2.1(D)*. In 1991, the Legislature enacted the *Victims' Rights Implementation Act*, 1991 Ariz. Sess. Laws 1137, 1152. That Act includes the Victim Contact Limit.

### A. The Victim Contact Limit and Its Implementation

The Victims' [**6] Rights Implementation Act provides that:

> [t]he defendant, the defendant's attorney or an agent of the defendant shall only initiate contact with the victim through [*108] the prosecutor's office. The prosecutor's office shall promptly inform the victim of the defendant's request for an interview and shall advise the victim of the victim's right to refuse the interview.

*Ariz. Rev. Stat. Ann. § 13-4433(B)*. The Victim Contact Limit that the Attorneys challenge is the Act's restriction on "the defendant's attorney," which the parties agree extends to the entire Defense Team. The Victim Contact Limit prohibits contacts from the Defense Team from the filing of charges through sentencing to "final disposition." Id. *§§ 13-4401(9)*, *13-4402(A)*. The term "victim" includes any "person against whom the criminal offense has been committed" or the person's close relatives "if the person is killed or incapacitated." Id. *§ 13-4401(19)*.

Under the supervision of the Arizona Attorney General, prosecutors' offices implement the Victim Contact Limit in different ways. Most use a form letter to inform victims of a Defense Team request for an interview. The language of the form letters varies among prosecutors' offices. While the form letter is not required, the Victim Contact Limit [**7] does require prosecutors to "promptly inform the victim of the defendant's request for an interview." *Ariz. Rev. Stat. Ann. § 13-4433(B)*.

### B. The Attorneys' Challenge to the Victim Contact Limit

The Attorneys sued the Arizona Attorney General, the Chief Bar Counsel, and the Director of the Arizona Department of Public Safety in their official capacities. The operative complaint challenged the Victim Contact Limit under the *Speech Clause of the First Amendment*, seeking to enjoin the statute's enforcement as to the Defense Team, and contending that the requirement that "the defendant's attorney" contact crime victims through prosecutors is unconstitutional on its face. The Attorney General moved to dismiss for lack of standing because the Attorneys did not challenge the similar limits of *Arizona Rule of Criminal Procedure 39* ("*Rule 39*"). That rule similarly requires "the defense" to "communicate requests to interview a victim to the prosecutor, not the victim." *Ariz. R. Crim. P. 39(b)(12)(A)*. Given this overlap, the Attorney General argued, the district court could not redress the plaintiffs' injuries because *Rule 39(b)(12)(A)* would continue to prevent defense attorney contact with crime victims even if the Victim Contact Limit were unconstitutional. The district court agreed and dismissed the case.

A panel of this Court reversed in an unpublished [**8] decision. *Ariz. Attys. for Crim. Justice v. Brnovich, No. 20-16293, 2021 U.S. App. LEXIS 25337, 2021 WL 3743888, at *1 (9th Cir. Aug. 24, 2021)*. We concluded that the Attorneys established the redressability requirement of standing. *2021 U.S. App. LEXIS 25337, [WL] at *2*. We explained that, "because it is possible to contact a victim without requesting to interview them, and thus violate *§ 13-4433(B)* without violating *Rule 39(b)(12)(A)*, enjoining Defendants from enforcing *§ 13-4433(B)* would relieve a discrete injury." *2021 U.S. App. LEXIS 25337, [WL] at *2*. On remand, the Attorneys renewed their motion for a preliminary injunction. The district court consolidated the preliminary injunction hearing with a bench trial.

At trial, the Attorneys offered testimony that, absent the Victim Contact Limit, they would share information about the criminal legal system with crime victims. For example, one defense attorney would explain to victims that the death penalty process takes years and involves continued contact with the legal system that can be retraumatizing. *Ariz. Att'ys for Crim. Just. v. Ducey, 638 F. Supp. 3d 1048, 1062 (D. Ariz. 2022)*. In doing so, the defense attorney hoped to help victims make a more informed decision about participation in [*109] the case. *Id.* Other defense attorneys would share their beliefs about justice and punishment with victims, investigate offenses, gather mitigation evidence in death penalty cases, and answer victims' questions about the defendant, the case, and the legal system. *Id. at 1061-63*.

In response, [**9] the Attorney General asserted the state's interests in the Victim Contact Limit, including implementing crime victims' Arizona constitutional and statutory rights, protecting victims from being retraumatized, and leveling the playing field between victims with counsel and those without counsel. *Id. at 1064-65*. For example, the Attorney General asserted, defense counsels' direct first-time contact with victims might harm victims by retraumatizing them because of counsels' association with the defendant. *Id. at 1067-68*. The district court agreed that "[i]t is possible that some victims may experience a negative reaction if contacted directly by the defense team." *Id. at 1068*.

After trial, the court permanently enjoined enforcement of the Victim Contact Limit, concluding it violated the *Speech Clause of the First Amendment*. After the Chief Bar Counsel moved to amend the judgment, the district court recognized that a Defense Team's request to interview a victim directly, which remains prohibited by *Rule 39(b)(12)(A)*, falls within the scope of the Victim Contact Limit. So the district court amended its permanent injunction to specify that it enjoined enforcement of the statutory Victim Contact Limit, but clarified that "[n]othing in this Order shall be construed . . . to enjoin [**10] *A.R.S. § 13-4433(B)*'s requirement that '[t]he prosecutor's office shall promptly inform the victim of the defendant's request for an interview and shall advise the victim of the victim's right to refuse the interview.'" We review the district court's "legal conclusions de novo, the factual findings for clear error, and the decision to grant a permanent injunction, as well as its scope, for an abuse of discretion." *Columbia Pictures Indus., Inc. v. Fung, 710 F.3d 1020, 1030 (9th Cir. 2013)*.

## II. The *Facial Speech Clause* Challenge

"Congress shall make no law . . . abridging the freedom of speech[.]" *U.S. Const. amend. I*; *see also* U.S. Const. amend. XIV, § 1 (incorporating the *Speech Clause* against the states). At the threshold, the parties dispute whether the Victim Contact Limit, and in particular its requirement that the Defense Team "shall only initiate contact with the victim through the prosecutor's office," *Ariz. Rev. Stat. Ann. § 13-4433(B)*, is a regulation of speech at all.

The Attorneys argue, and the district court held, that prohibiting the Defense Team—but not the prosecution—from directly contacting victims is a content- and viewpoint-based regulation of speech subject to strict scrutiny. *See Holder v. Humanitarian L. Project, 561 U.S. 1, 27-28, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010)*. The Attorney General responds that the Victim Contact Limit regulates professional contact with victims through a procedural mechanism that only "incidentally involves speech." *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra, 585 U.S. 755, 768, 138 S. Ct. 2361, 201 L. Ed. 2d 835 (2018)*; *Tingley v. Ferguson, 47 F.4th 1055, 1080 (9th Cir. 2022)*; *see* [**11] *also Gentile v. State Bar of Nevada, 501 U.S. 1030, 1074, 111 S. Ct. 2720, 115 L. Ed. 2d 888 (1991)* (explaining that "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of" other types of speech).

We need not resolve that dispute because the Attorneys made a facial challenge to the Victim Contact Limit. In considering [*110] a facial challenge we may assume without deciding that the statute "reaches some protected speech." *United States v. Hansen, 599 U.S. 762, 784, 143 S. Ct. 1932, 216 L. Ed. 2d 692 (2023)*; *Marquez-Reyes v. Garland, 36 F.4th 1195, 1207 (9th Cir. 2022)*. But even so, the Attorneys must also show that "a substantial number of [the Victim Contact Limit's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta, 594 U.S. 595, 615, 141 S. Ct. 2373, 210 L. Ed. 2d 716 (2021)* (quoting *United States v. Stevens, 559 U.S. 460, 473, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010)*). Or, as the

Supreme Court has more recently characterized the standard, "the ratio of unlawful-to-lawful applications" must be "lopsided enough to justify the 'strong medicine' of facial invalidation for overbreadth." *Hansen, 599 U.S. at 784* (quoting *Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)*). Even under the *Speech Clause*, facial challenges are "hard to win" because they "'often rest on speculation' about the law's coverage and its future enforcement," and, when successful, "prevent[] duly enacted laws from being implemented in constitutional ways." *Moody v. NetChoice, LLC, 603 U.S. 707, 723, 144 S. Ct. 2383, 219 L. Ed. 2d 1075 (2024)* (quoting *Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450-51, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008)*).

We proceed to the facial claim before us in two steps. First, we "assess the [**12] state law['s] scope." *Id. at 724*. Second, we "must explore the [Victim Contact Limit's] full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Id. at 726*. In doing so, we assume without deciding that the Victim Contact Limit is unconstitutional as applied to the Attorneys' proposed non-interview contacts with victims.

**A. The General Scope of the Victim Contact Limit**

First, we assess the scope of the law at issue: "What activities, by what actors, do the laws prohibit or otherwise regulate?" *Id. at 724*. The parties agree that the actors regulated by the Victim Contact Limit are members of the Defense Team.

As to the activities regulated, the Victim Contact Limit prohibits the initiation of contact with a crime victim unless the defense "initiate[s] contact with the victim through the prosecutor's office." *Ariz. Rev. Stat. Ann. § 13-4433(B)*. The Victim Contact Limit applies from the arrest or formal charging of the defendant until the final disposition of the charges. *Id. § 13-4402(A)*. It includes not only crime victims themselves, but also family members of victims who have been "killed or incapacitated." *Id. § 13-4401(19)*. Initiating contact without going through the prosecutor's office violates the Victim Contact Limit [**13] even if the victim accepts the contact. *See id. § 13-4433(B)* (providing no exception for such contact).

On its face, the Victim Contact Limit covers any communication at all during a criminal case. Its primary application is to requests for interviews, including, but not limited to, investigative interviews seeking exculpatory information. But the district court concluded, and the parties do not dispute, that the Victim Contact Limit applies beyond victim interviews to broader conversations about the case and the legal system in general. It prohibits covered actors from reaching out to "victims who have unresolved questions about the crime committed against them and the criminal defendant in hopes of aiding in the victim's understanding and healing," *Ariz. Att'ys, [*111] 638 F. Supp. 3d at 1063*, or initiating conversations with victims involving "personal views about the goals of the criminal legal system" to "further truth-seeking within the legal system," *id. at 1062*. The Victim Contact Limit also applies to Defense Team attempts to contact victims with information that it believes may help victims—and the Defense Team's clients—such as general information about the legal process and the Defense Team's "core beliefs about trauma, punishment, and [**14] justice."

**B. The Challenged Applications of the Victim Contact Limit**

Second, we "decide which of the laws' applications violate the *First Amendment*, and . . . measure them against the rest." *Moody, 603 U.S. at 725*. The Attorneys challenge the Victim Contact Limit's application to Defense Team contacts with victims to share information about the crime, the case, and the legal system generally. Even if we assume that these challenged applications are unconstitutional, for purposes of the facial challenge we also must account for "the rest" of the applications not challenged.

Most significantly, the Attorneys do not challenge the Victim Contact Limit's application to a Defense Team's initiation of contact with victims to request an interview. As the district court recognized in its amended judgment, and the Attorneys conceded at oral argument, such direct requests for victim interviews remain within the scope of

Rule 39(b)(12)(A), which the Attorneys did not contest and the district court did not enjoin.[1] Under that rule, the Defense Team still must make these interview requests through a prosecutor's office, just as they are required to do under the Victim Contact Limit. See Ariz. R. Crim. P. 39(b)(12)(A) (requiring "the defense" to "communicate requests to interview a [**15] victim to the prosecutor, not the victim"). Because of that overlap, the Attorneys leave unchallenged the law's application to victim-interview requests covered by Rule 39(b)(12)(A).[2] Given that the Attorneys chose not to challenge the Victim Contact Limit's application to interview requests or appeal the district court's modification of the preliminary injunction, we must treat that application as constitutional for purposes of this facial challenge. See Moody, 603 U.S. at 726 (instructing that a court's overbreadth analysis must address "the law['s] full range of applications" and place each application on one side of the scale).

Instead, the Attorneys direct their challenge to the edges of the Victim Contact Limit: initiating contact for the Defense Team's "conversations" and "information sharing" with victims. But victim interviews are the core concern of the challenged law. The statutory section at issue bookends the Victim Contact Limit with provisions that speak directly to victim interviews. Subsection (A), just before the subsection (B) contact limit, provides that "[u]nless the victim consents, the victim shall not be compelled to submit to an [*112] interview on any matter . . . that is conducted by the defendant, the defendant's attorney or an [**16] agent of the defendant." Ariz. Rev. Stat. Ann. § 13-4433(A). Subsection (D), two sections after the Victim Contact Limit, states the conditions on the interview that would follow the initiation of contact "[i]f the victim consents." Ariz. Rev. Stat. Ann. § 13-4433(D). This statutory context frames the Victim Contact Limit primarily as a regulation of victim-interview requests. And the Attorneys admit that most of the speech at issue relates to their investigation and defense of the cases involving the victims with whom they propose to communicate, including through interviews.

### C. Measuring the Unchallenged against the Challenged Applications

Plaintiffs in a facial challenge must prove that the statute's "unconstitutional applications [are] realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." Hansen, 599 U.S. at 770; Tucson v. City of Seattle, 91 F.4th 1318, 1327 (9th Cir. 2024). Without a "lopsided ratio," Hansen, 599 U.S. at 770, a facial challenge fails because "the law's unconstitutional applications" must "substantially outweigh its constitutional ones," Moody, 603 U.S. at 724.

The Attorneys argue, and the district court held, that the Victim Contact Limit is facially unconstitutional because "[e]ven if the Statute has a plainly legitimate sweep to speech that is harassing, intimidating, or abusive, . . . the Statute covers *all* defense-initiated [**17] contact with victims in ongoing proceedings[.]" Ariz. Att'ys, 638 F. Supp. 3d at 1086. On that view, the law's presumably unconstitutional application to non-abusive contact would be substantial in relation to its legitimate application to abusive contact. *Id.* But this approach mistakes both sides of the ratio at issue. First, it understates the Victim Contact Limit's legitimate sweep, which goes beyond abusive contact. That sweep also includes the law's unchallenged applications to victim-interview requests. As those aspects of the law are unchallenged, they would remain in force even if the Attorneys' facial challenge were to succeed, and so are properly considered lawful for purposes of the overbreadth analysis. Conversely, counting these unchallenged applications as unlawful overstates the extent of the Victim Contact Limit's unconstitutional applications. Excluding these unchallenged applications, all that's left as allegedly unconstitutional are Defense Team contacts that do not request a victim interview.

---

[1] We previously held that the Attorneys have standing "because it is possible to contact a victim [under the Victim Contact Limit] without requesting to interview them [under Rule 39(b)(12)(A).]" Ariz. Att'ys, 2021 U.S. App. LEXIS 25337, 2021 WL 3743888, at *2. But whether a party has standing to bring a facial challenge and whether that challenge succeeds on the merits are different questions. Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011) ("[T]he threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim.").

[2] At oral argument, the Attorneys suggested that Rule 39(b)(12)(A) applies only to requests for "formal" interviews, like depositions, rather than all interview requests. But Rule 39 contains no such distinction.

Considering the full scope of the Victim Contact Limit against the limited contacts here challenged, its assumedly unconstitutional applications are insubstantial relative to its assumedly valid ones. The Victim [**18] Contact Limit's primary applications to victim-interview requests are, absent a challenge, its "legitimate sweep."[3] Therefore, the Attorneys' facial challenge must fail.[4]

 [*113] **III. Conclusion**

In rejecting the Attorneys' facial challenge under the *Speech Clause*, we do not reach the constitutionality of the Victim Contact Limit. Nor do we decide whether a future facial or as-applied challenge to the law, including its application to victim-interview requests, could succeed. We hold only that this facial challenge to the Victim Contact Limit, as framed, fails. Accordingly, we reverse the district court's ruling that the Victim Contact Limit is unconstitutional on its face, vacate the permanent injunction against its enforcement, and remand for entry of judgment in favor of Defendants.

**REVERSED and REMANDED**

---

**End of Document**

---

[3] The Supreme Court sometimes frames the relevant inquiry as the absolute weight, rather than the relative number, of impermissible applications. *See, e.g.*, *United States v. Williams, 553 U.S. 285, 292, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)* (assessing whether a statute "prohibits a substantial amount of protected speech" without determining the number of constitutional applications). Any difference between these two metrics does not change our analysis. Whether measured by weight or by number, the challenged applications are insubstantial.

[4] We also reject the Attorneys' argument that the Victim Contact Limit is an unconstitutional prior restraint on speech. First, the Victim Contact Limit, which *requires* the government to communicate contact requests to victims, does not authorize "administrative and judicial orders *forbidding* certain communications . . . in advance of the time that such communications are to occur." *Alexander v. United States, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993)* (quoting Melville B. Nimmer, *Nimmer on Freedom of Speech: A Treatise on the Theory of the First Amendment* § 4.03, at 4-14 (1984)). Nor does the Victim Contact Limit, which allows the *victim* the discretion to choose to talk to the Defense Team, "vest[] unbridled discretion" [**19] in the government to license some speech and forbid other speech. *Get Outdoors II, LLC v. City of San Diego, 506 F.3d 886, 894 (9th Cir. 2007)* (quoting *City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 759, 108 S. Ct. 2138, 100 L. Ed. 2d 771 (1988)*).